JONES, Judge.
The parties to this suit were married in December of 195'2 and separated by judicial decree in January of, 1959. On August 26th of the same year, a partition suit was instituted by the husband, plaintiff-appellee herein, claiming a community interest in the improvements made to the separate property of the wife, defendant-appellant, during the existence of the community. There were four pieces of property involved in the litigation, one of which was community property, the other three being the separate property of the wife, defendant-appellant.
The District Court decreed one piece of property as belonging to the community and decreed the other three pieces of property as the separate property of the wife and ordered that the community property be sold to effect the partition. By agreement between the parties, the community property has been sold and the community debts recognized by the court have been paid out of the proceeds of the sale, and the remainder of the proceeds divided between the litigants.
One of the errors that defendant-appellant is complaining of in this court is the portion of the judgment of the District Court which allowed the community a claim in the sum of $8250 for the improvement of the separate property of defendant-appellant, this property being Lot One of Sqttare 54 of the Greenville Extension, which the evidence shows was acquired by the defendant-appellant about one year prior to her marriage to the plaintiff-appel-lee and there is no question but what the property is her separate property. It is, however, shown that the community paid the mortgage balance on this property of $615.36. In the year of 1955, a four-plex apartment was erected on the Greenville Extension lot and a mortgage was placed on the property in connection with said construction. It was defendant’s contention in the lower court that her separate estate should be credited with an amount equal to the proven amount which was paid on the mortgage out of the rent from the separate property. Further, she contended that the cash portion of the construction cost was paid with her separate funds. Both of these claims were decided adversely to the defendant and, in addition -thereto, the court rendered judgment determining the cost of construction to be $7,943.50 and fixed this as the community’s claim against the separate estate.
From this judgment, the defendant filed a motion for a new trial for the purpose of correcting the errors of computation contained in .arriving at and fixing the amount of the community’s claim. The District Judge refused the application for a new trial but he did, upon agreement of the parties, make a slight adjustment in rer gard to two paving liens on the property. However, the Judge then granted a--rehearing on his own motion and found the improvements to the Greenville Extension property amounted to $8,250 and, accord-’ ingly, found this was the enhanced value of the property resulting from said improvements. Adding this amount to the $770.07 cost of paving liens, $615.36 payment by the community -on the mortgage on the separate property and--$350 constituting the improvements-"to the Colorado-Street property (which is not in contest in this suit), *428 the District Court concluded the separate property was indebted to the community in the sum of $9,985.42 and rendered judgment in favor of plaintiff and against the defendant in the amount of. $4,992.71.
In this court, defendant-appellant complains that the trial court erred in allowing the appraised value of the improvements instead of the cost of improvements as the amount of the community’s claim for improvement of the separate property, being the Greenville Extension property; that the trial court erred in its finding that all the cash money expended for erecting, the apartment on the Greenville Extension property was community funds; that the trial court erred in refusing to credit the defendant’s separate estate for the amount paid on the mortgage debt on the property out of the rent income from the property; and that, finally, the trial court erred in refusing to grant a new trial for the purpose of correcting the errors of computation in arriving at and fixing the amount of community’s claim.
As has heretofore been explained, the District Court, in its reasons for judgment when the case was concluded, allowed the claim of the community against the separate estate for what it found to be the cost of the improvements but did not find that the property had been enhanced in value as a result of said improvements. However, after granting the new trial, the court reached the conclusion that the separate property had been enhanced in the sum of $8,250 as a result of improvements with community funds. The court apparently reached this conclusion as a result of the stipulation entered into between the parties 'on page 3 of the transcript to the effect that the present appraised value of the lot with the improvements was $10,750 and that the improvements were placed thereon during the marriage with community funds and the present valuation of the lot, exclusive of the improvements, was $2,500. Thus, the court subtracted the amount that had been agreed upon as the value of the lot from the amount that had been agreed upon as the value of improvements and reached the figure of $8,250. It is important to note that this agreement was made on December 4, 1959, which was almost one year after the dissolution of the community by the separation which was granted January 21, 1959.
The correctness of the judgment of the District Court in regard to enhancement of the separate property must be determined in accordance with the provisions of Article 2408 of the LSA-Civil Code:
“When the separate property of either the husband or the wife has been increased or improved during the marriage, the other spouse, or his or her heirs, shall be entitled to the reward of one half of the value of the increase or ameliorations, if it be proved that the increase or ameliorations be the result of the common labor, expenses or industry; but there shall be no reward due, if it be proved that the increase is due only to the ordinary course of things, to the rise in the value of property, or to the chances of trade.”
There are many cases in our jurisprudence interpreting the provisions of the above Article, among them Depas v. Riez, 2 La.Ann. 30; Succession of McClelland, 14 La.Ann. 762; Succession of Boyer, 36 La.Ann. 506; Funderburk v. Funderburk, 214 La. 717, 38 So.2d 502; Abunza v. Olivier, 230 La. 445, 88 So.2d 815; Abraham v. Abraham, 230 La. 78, 87 So.2d 735; Succession of Rusciana, 232 La. 1073, 96 So.2d 1.
The first two above-cited cases held that the separate estate could not be charged with the cost of the improvements but only with the amount that such improvements enhanced the value of said separate estate.
In the Succession of Boyer, even though the community claimed $3,149 as the cost of improvements on the separate property, the court allowed only $2,000, which it held *429 was the enhanced value of said separate property.
In the Abunza case, the record did not reflect any enhancement in the value of the separate property where the improvements were made with community funds. However, the trial court allowed the community the amount it had spent for making the improvements and the Supreme Court held that this was clearly erroneous because recovery under Article 2408 is not based on the amounts expended by the community for the repair and improvement of the separate property hut is limited to the enhanced value of the property resulting from repairs and improvements.
In the Abraham case, the facts showed that the wife owned, prior to marriage, a going furniture and appliance business and during the marriage she continued to operate it and its worth increased something in excess of $30,000. In this case, the Court did allow the husband one-half of the increase. The enhancement in value in this instance was brought about by the industry of the wife in operating the furniture and appliance business and it most assuredly was not an improvement made upon separate property involving the expenditure of community funds. The enhanced value there was brought about by the industry of the wife operating the business as a partner in community.
In the Rusciana case, the record disclosed evidence to prove the value of the separate property at the time of the decedent’s death as well as 14 months later. There was also evidence of the actual cost of repairs and improvements made to the defendant’s property at the expense of the community. However, the court held there was no evidence to show the value of the separate property prior to the improvements in order to determine the enhanced value at the time of the dissolution of the community.
From the cases hereinabove cited, it is obvious that the cost of the improvements does not determine the recompense but it is the enhanced value of the property or the increase if it be proved that the enhancement or increase be the result of the common labor, expense or industry.
In the present case, we are of the opinion that the District Court has erred in finding that the enhanced value of the separate property in this case is $8,250. It is true that on page 3 of the transcript the parties agreed that the whole property on December 4, 1959, approximately one year after the dissolution of the community, was worth $10,750 and the value of the lot was $2,500. Thus, the court reached the conclusion that the difference between the two figures, represented by the improvements, enhanced the value by the amount of $8,250.
In the Rusciana case, the court specifically pointed out that the enhanced value at the time of the dissolution of the community had to be determined and reversed and remanded the case in order that testimony might be taken on said point. Thus, from the testimony in this record, we are unable to ascertain the enhanced value of the separate property at the time of the dissolution of the community because there is no evidence on said point. For this reason alone, this case must be reversed and remanded, which we believe we have the right to do under Article 906 of the Code of Practice:
“ * * * If the court shall think it not possible to pronounce definitively on the cause, in the state in which it is, either because the parties have failed to adduce the necessary testimony, or because the inferior court refused to receive it, or otherwise, it may, according to circumstances, remand the cause to the lower court, with instructions as to the testimony which it shall receive, to the end that it may decide according to law.”
In remanding this case, we are of the opinion that the District Court should re *430 ceive evidence of the common labor, expenses or industry furnished by the community that resulted in an increase of the value of the separate estate and should further receive evidence, if offered, seeking to show that whatever increase occurred in the separate estate was brought about only in the ordinary course of things, to the rise in the value of the property or to the chances of trade. From this testimony, the Court should reach a decision on the enhanced value of the separate property at the time of the dissolution of the community. Additionally, we are of the opinion that the court should permit testimony showing the cost of the paving lien on the separate property for obviously there were errors of computation in the first reasons for judgment given by' the court and even though most of these were brought about by admissions from counsel for defendant, still it does riot reflect a true picture and we do not believe that the defendant should be penalized by an error in computation by her counsel. We specifically limit the taking of testimony to the matters'hereinabove set forth.
' Even though we are remanding the case for the taking of additional evidence as hereinabove set forth, we consider it proper to dispose of the other two alleged errors which defendant-appellant contends were committed by the District Court.
The first of these errors is that the lower court failed to allow the defendant-appellant a credit of $2,700, which she contended she expended out of her. separate funds toward the construction of the four-plex apartment building on the Green-ville Extension property. The defendant’s testimony was .to the effect that she had accumulated $5,000 in cash prior to her marriage, which was in the year 1952, and that she placed this money in a safety deposit box in bills in the denomination of $100 each and, during the time the .four-plex apartment was being constructed, she withdrew '-funds from time to time from the safety deposit box and deposited said funds' in the community bank account where they were expended for the construction of said apartment. The District Judge in his reasons for judgment" pointed out the impossibility of this defendant accumulating $5,000 prior to her marriage by showing exactly what she earned and the various expenditures that she made. In addition to this, he further pointed out that the deposits in the community bank account did not correspond as to dates with withdrawals made from defendant’s safety deposit box. He further commented that the only evidence as to the $5,000 of separate funds in the safety deposit box was the testimony of defendant herself and that since her sister and brothers were joint lessees of said box and since defendant said she kept the money in a sealed envelope in the box, the Judge thought that they should have been produced to have corroborated the testimony of the defendant. Thus, the court held that the funds that went to build the four-plex apartment consisted of community funds and not any of the separate funds of the defendant and denied her claim of $2,700. We are of the opinion that the holding of the District Court in this respect was correct and, further, it is plausible that the funds which were deposited to the community account in the neighborhood of $2,700 came-from the operation of the Golden Dragon saloon, as held by the District Judge. Of course, these were community funds. Thus, we are of the opinion that the District’ Judge did not commit error in refusing to allow the defendant’s claim for $2,700.
The other error complained of is that the District Court refused to credit the separate estate with the amount which was paid from rents from the Greenville Extension property in discharge of the mortgage loan which was incurred in order to obtain funds to defray part of the construction costs of. the apartment. Since the defendant did not record the affidavit required by law to retain the administration of her separate property, the rents from the apartment went into the comriiunity. *431 However, irrespective of this, defendant claims that the rent from the separate property paid the monthly installments and she is entitled to claim against the community the full amount of such payments. She cites in support of her claim the cases of Courrege v. Colgin, 51 La.Ann. 1069, 25 So. 942; Succession of Ratcliff, 209 La. 224, 24 So.2d 456; Succession of Brunies, 209 La. 629, 25 So.2d 287; as well as Sharp v. Keller, 110 La. 61, 34 So. 129.
The District Judge, after analyzing the above cases, we believe correctly, came to the conclusion that the holdings in these cases were not applicable to the present case for the reason that in none of these cases was it shown that there was a substantial improvement placed on the separate property during the existence of the community for he stated the true test seems to be that if the community expenditures do nothing more than to preserve the separate property and maintain it in its normal condition, such expenditures are chargeable to the community and the separate estate is entitled to a credit for said amount but if the expenditures are for substantial improvements which appreciably enhance the value of the separate property, then the owner of the separate property is not entitled to a credit for the value of said improvements.
In the Succession of Brunies, supra, it is true that the Supreme Court of this State held that where the income from the separate estate was sufficient to pay insurance, taxes and interest, as well as principal on the loan secured by a mortgage on the separate property, these items were chargeable to the community. However, the facts show the husband in that case, who was the owner of the separate property, was in ill health and the principal source of income during the marriage was the rent from the real estate belonging to the separate estate and this was the real estate that was mortgaged, creating the indebtedness sought to be charged to the community. Under these facts, the court held that the expenses, viz., the mortgage, were necessary for the maintenance and preservation of the separate estate and, consequently, a liability of the community. The court further in the Brunies case analyzed Sharp v. Keller, Succession of Ratcliff and Courrege v. Colgin and the facts in each of these cases show the indebtedness that was created was used for the preservation and maintenance of the separate property which was an obligation of the community, for the community benefited therefrom. In the'present case, however, defendant-appellant is seeking to credit her separate estate with the amount which was paid from rents from the Greenville Extension apartments in discharge of the mortgage loan which was incurred to defray a part of the construction costs of said apartment building. Thus, we do not have here á situation where the maintenance and preservation of the separate property is concerned but we have a situation of the creation of the separate property, viz., the construction of the four-plex apartment building on the vacant lot which was separate property. Thus, where there is the construction of a substantial improvement on separate property, then the owner of said property has no right to be reimbursed by the community for the cost of this construction for the very obvious reason that said construction did not constitute maintenance or preservation of said separate property.
Accordingly, for the reasons heretofore given, the judgment appealed from is reversed and remanded for further proceedings consistent with the views herein expressed,. the cost of this appeal to be paid by the appellee and all other costs to await the final disposition of this case.