136 So.2d 509 (1961)
Succession of Virginia Intravl RUSCIANA.
No. 5247.
Court of Appeal of Louisiana, First Circuit.
December 18, 1961.
Rehearing Denied February 19, 1962.
Ponder & Ponder, Amite, for appellant.
Iddo Pittman, Jr., Hammond, Charles B. W. Palmer, Amite, for appellee.
Before LOTTINGER, LANDRY and REID, JJ.
LANDRY, Judge.
The instant appeal is the sequel to Succession of Virginia Intravi Rusciana, 232 La. 1073, 96 So.2d 1, in which plaintiffsappellees sought judicial recognition as children and heirs at law of decedent Virginia Intravi Rusciana, and in such capacity, prayed for judgment against defendant-appellant Philip Rusciana, surviving widower in community of plaintiffs' deceased mother and stepfather of plaintiffs (plaintiffs being children of decedent by a prior marriage), for one-half the alleged enhanced value of defendant's separate estate asserted to have resulted during the existence of the community of acquets and gains between defendant and decedent by virtue of the common labor, expense and industry of said parties in community.
From a judgment rendered herein May 21, 1956, in favor of plaintiffs in the sum of $1,653.50, defendant Philip Rusciana appealed to the Supreme Court of this state which tribunal on May 6, 1957, rendered an *510 opinion reversing and setting aside the judgment in favor of plaintiffs and remanding this matter to the trial court for further proceedings.
In the course of its opinion reported in 232 La. 1073, 96 So.2d 1, 3; the Supreme Court stated:
"Thus, the two minors in the instant case, being unrepresented, were not legally before the court and, accordingly, the judgment of the trial court as to them is invalid. * * *
"Moreover, since the minors are heirs of decedent and their interest in her property would be determined and affected by the decree rendered herein, they are necessary parties to the cause. Hence, we shall remand the case to permit a proper substitution of parties and the rendition of a valid judgment, all in accord with our probate laws. * * *
"To an end to eliminate undue delays in this litigation we shall consider the correctness of the judgment of the trial court relative to the value of the alleged enhancement of the separate property of defendant. In considering this phase of the case we are primarily concerned with the sufficiency of the evidence with respect to the value of the separate property at the time of the inception of the community as well as at the time of its dissolution. * * *
"The record discloses evidence to prove the value of the separate property at the time of decedent's death as well as 14 months later. There is also evidence of the actual cost of some of the repairs and improvements made to the defendant's property at the expense of the community. However, there is no evidence to show the value of the separate property prior to these improvements and more particularly at the inception of the community in order to determine the enhanced value at the time of the dissolution of the community."
We interpret the foregoing instruction emanating from the highest appellate court of this state to mean the remand of this matter was ordered for but two specific purposes: (1) the substitution of certain parties; (2) the taking of evidence to establish the value of the defendant's separate estate on the inception of the community between decedent Virginia Intravi Rusciana and defendant herein, or in other words, on the date of defendant's marriage to the mother of the plaintiffs herein.
The learned trial judge likewise so understood and construed the mandate of the Supreme Court issued herein for, upon retrial of this matter in conformity with the order of remand, she restricted the testimony solely to evidence to establish the value of the defendant's separate estate at the beginning of the community between defendant and decedent Virginia Intravi Rusciana.
After rehearing this matter the trial court again rendered judgment in favor of plaintiffs and against defendant in the sum of $1,653.50 and from said judgment defendant has taken this appeal.
There appears to be no dispute between the parties respecting the principles of law controlling the issues involved in this litigation. All agree the question involved is controlled by the provisions of LSA-R.C.C., Article 2408, which provides, in substance, that when the separate and paraphernal property of either spouse is enhanced, increased or improved during the marriage, the other spouse (or his or her heirs) shall be entitled to the reward of one-half the enhanced value resulting from the common labor, expense or industry of the parties in community but no reward shall be due for enhancement which results solely in the ordinary course of events or is due to rise in property values or the chance of trade.
In interpreting LSA-R.C.C. Article 2408, the courts of this state have evolved jurisprudence holding in essence that where the separate property of a partner in community *511 is shown to have been improved at the common expense, the compensation due the other is determined not by adding the improvements separately to the value of the land but by deducting from the actual value of the land as it existed on the date of dissolution of the community the value it would have had at that time had it not been so improved. The difference is the enhanced or increased value, one-half of which goes to the other party. Funderburk v. Funderburk, 214 La. 717, 38 So.2d 502; Payton v. Jones, La.App., 38 So. 2d 631; Falconer v. Falconer, 167 La. 595, 120 So. 19; Dillon v. Freville, 129 La. 1005, 57 So. 316.
A husband or wife claiming entitlement to one-half of the enhanced value of the other's separate estate because of alleged increased value thereof resulting from their joint effort and industry during the marriage bears the burden of proving; (1) the improvements so made did in fact enhance the value of the separate property of the other; (2) such improvements were made with community funds or resulted from their joint industry, expense or labor; (3) the value of the separate property of the other spouse at the commencement and dissolution of the community (so that the enhanced value may be determined); and (4) that the enhancement did not result in the ordinary course of events or due to the property's normal rise in value or the chance of trade. Funderburk v. Funderburk, 214 La. 717; 38 So.2d 502, and cases cited therein.
The record in the case at bar shows that defendant Philip Rusciana and decedent Virginia Intravi Rusciana were married March 1, 1925, at which time defendant, a prosperous strawberry farmer, owned, operated and resided upon a 41 acre farm purchased by him on March 19, 1920 (during his marriage to his first wife, Paula Giambbrona) for a recited consideration of $3,000.00.
Subsequent to said purchase (the date thereof not appearing in the record) defendant's first wife died and the inventory filed in her succession proceedings under date of February 12, 1921, reveals her one-half interest in the farm was appraised at the sum of $1,500.00. At the time of defendant's marriage to decedent Virginia Intravi Rusciana (March 21, 1925) there was situated on the farm a large, two-story frame residence in which defendant lived and into which he moved his said second wife and the several children of her former marriage (plaintiffs herein). Defendant shared the residence with decedent and plaintiffs, accepting and treating plaintiffs as his own issue. In addition to the residence there was situated on the property a large, well maintained barn. It also appears that defendant possessed all livestock and equipment consisting of mules and farming implements required in the operation of a successful and prosperous strawberry farm. Water for domestic and agricultural purposes was provided by two wells located on the farm. As one witness who testified herein expressed it, in 1924 defendant's farm "was in full bloom", one of the most pretentious, prosperous and well-kept farms of its kind in the area.
During the marriage of defendant and decedent Virginia Intravi Rusciana the large two-story home formerly situated in a grove of trees some distance from the highway was moved nearer the road and converted into a one-story commercial building, a new residence was constructed on the premises and provided with a butane tank to afford the modern conveniences made possible by the availability of gas. In addition, the newly constructed residence was equipped with a completely operational bathroom, a feature which the original two-story residence did not possess. Two additional wells were drilled on the property both of which went dry prior to the death of decedent Virginia Intravi Rusciana. In 1930 the large barn burned and to replace said building two similar but smaller structures were erected. Two small tenant houses were also built on the property during the exsitence of the community involved herein.
*512 The record in this case is replete with testimony (given by witnesses for both plaintiff and defendant) to the effect that upon dissolution of the community by the death of plaintiffs' mother on April 14, 1954, the farm had degenerated to a deplorably run-down condition. The land itself was untilled and grown up in weeds. The commercial establishment which had been created out of the former two-story residence was in such an advanced state of deterioration it was almost uninhabitable, it being shown, however, it was in fact occupied by a negro family. The main residence (constructed during the community) was so badly neglected and in need of repair it was unsuitable for occupancy and tenants which had previously rented same had been forced to move out because the floor had rotted and there was danger of falling through. The butane system installed in the residence had become inoperable because the tank leaked which condition was discovered shortly prior to death of the decedent. The condition of the two tenant houses was such they were unsuitable for occupancy and were in fact vacant.
In awarding plaintiffs judgment in the sum of $1,653.50, the learned trial judge did so primarily upon the testimony of plaintiffs' witness, Thomas G. Womack, a realtor with many years experience in the field. Mr. Womack appraised all the improvements separately assessing a value to each in the condition in which he found them on January 17, 1955, the date upon which he inspected the property. In this connection, it will be recalled that Mrs. Rusciana died April 14, 1954. Other witnesses besides Womack called on behalf of plaintiffs similarly valued each of the improvements. Such procedure, of course, is not the proper method of determining enhanced value in a case of this character. The measure of recovery is not one-half the value of the improvements in the condition in which they are found on the date of dissolution of the community but rather the increased or enhanced value of the separate estate because of the presence thereon of the improvements in question.
In deciding the issue in the manner indicated the learned trial court fell into manifest error. Equally fatal to plaintiffs' cause is petitioners' failure to establish the value of defendant's separate property as of March 21, 1925, the date of the marriage and inception of the community partnership between defendant and his deceased wife, Virginia Intravi Rusciana. On this score we note that on retrial of this matter pursuant to the remand directed by the Supreme Court, the only testimony offered by plaintiffs to establish the value of defendant's separate estate on the date of the inception of the community involved was the deed whereby defendant was shown to have acquired the property on March 19, 1920 (five years prior to commencement of the community in question) for the sum of $3,000.00 and the inventory dated February 12, 1921, (four years before the beginning of the community in question), in which the one-half interest of defendant's first wife therein was appraised in the amount of $1,500.00. We are unable to acquiesce in the contention of illustrious counsel for plaintiff that such evidence alone discharges the burden incumbent upon plaintiffs to prove the value of defendant's separate property as of March 21, 1925 by a fair preponderance of the evidence as the law requires.
We acknowledge that plaintiffs attempted to augment and support the aforegoing documentary evidence by the testimony of Felix Riggio and Emile Shillace but our careful examination of the testimony of said witnesses discloses that whereas both testified as to the per acre cost of certain property situated in the vicinity of defendant's farm on or about March 21, 1925, neither was able and both expressly declined to estimate or appraise the value of defendant's property at that time.
From the evidence appearing in the record herein we are unable to reach any logical or well-founded conclusion concerning the value of defendant's separate estate at the inception of the community involved and must perforce dismiss *513 plaintiffs' claims because of their failure to establish this indispensable element of their demand. Assuming arguendo, enhancement occurred in the instant case, the impossibility of measurement thereof is readily apparent.
For the reasons hereinabove set forth, it is ordered, adjudged and decreed that the judgment of the trial court is affirmed insofar as it acknowledges plaintiffs to be the heirs at law of decedent Virginia Intravi Rusciana and, as such, entitled to be recognized as owners and placed in possession of her estate but reversed insofar as it awards plaintiffs judgment against defendant Philip Rusciana in the sum of $1,653.50 (or any other amount whatsoever) and judgment herein rendered in favor of defendant Philip Rusciana and against plaintiffs Nick B. Canino, Ben Canino, Mary Canino Riggio, Josephine Canino Lorio, Lillie Canino Latoria, Nita Canino Zita, Annie Canino De Nardo, Angelo Schillace and Frank Schillace, rejecting said plaintiffs' demands at plaintiffs' cost.
Amended and affirmed.